IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Willie J. Jackson, #118156, ) | Civil Action No. 6:12-231-TLW-KFM |
| Plaintiff, ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| Doctor Donald Sampson, Doctor ) Steen, and Warden Stevenson, ) | |
| Defendants. ) | |

This matter is before the court on the defendants' motion for summary judgment (doc. 31). The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d) DSC, this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff is a prisoner of the South Carolina Department of Corrections ("SCDC"), incarcerated at Broad River Correctional Institution ("BRCI"). At all times relevant to this case, the defendants Dr. Sampson and Dr. Steen were medical doctors employed by SCDC, and defendant Stevenson served as Warden of BRCI. The plaintiff claims that the defendants violated his constitutional rights by being deliberately indifferent to his serious medical needs and that they discriminated against him.

The complaint was filed on January 27, 2012, and the defendants filed an answer on March 6, 2012, denying the allegations. On May 17, 2012, the defendants filed a motion for summary judgment. By order filed May 18, 2012, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment

dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed his response in opposition on July 16, 2012.

**FACTUAL ALLEGATIONS**

The plaintiff alleges that in early 2009, Nurse Williams (a non-party) informed him that he was diagnosed with Hepatitis C, and as a result, "he was designated to participate in a treatment program at the KCI[1] Infirmary" (comp. p. 3). He alleges that in April 2010, he submitted a request to Dr. Sampson for his status on participating in the program, and received a response from Mrs. Werre (a non-party) that his designation had "fallen through the cracks." He then allegedly received another response the next month that his designation had indeed fallen through the cracks, but that Dr. Steen had since reviewed and denied the designation for treatment (*id*. pp. 3-4). In June 2010, the plaintiff filed a grievance on his denial to participate in the treatment program, and Warden Stevenson denied it in November 2010, citing Dr. Steen's rejection. The plaintiff alleges that the defendants ignored SCDC policy by denying him access to the treatment program and medications to "hinder the escalation" of his Hepatitis C (*id*. p. 4). He further alleges that he was the victim of discrimination because white inmates with the same condition received treatment (*id*. p. 5).

In support of their motion for summary judgment, the defendants provide the affidavit of Dr. Sampson (doc. 31-2) and SCDC's medical summary records for the plaintiff (doc. 31-3), showing that he was diagnosed with Hepatitis in September 2008 (encounter 249), and that he signed an "Agreement to Accept Hepatitis C Evaluation and Treatment Plan"[2] on December 2, 2008 (Sampson aff. p. 2). In addition, they provide their answers to plaintiff's interrogatories (doc. 31-4), explaining that SCDC's treatment protocol for

---

[1]Kirkland Correctional Institution is another SCDC facility.

[2]The Agreement has not been provided to the court, nor has the plaintiff contested in his response in opposition to summary judgment that he did not sign it.

2

Hepatitis depends on a variety of physical and mental factors and that the plaintiff was not eligible for the KCI treatment program. Dr. Sampson testifies that the plaintiff has received treatment for his condition and continues to receive treatment (Sampson aff. p. 3).

In his response in opposition to summary judgment, the plaintiff attaches copies of SCDC Policies HS-18.15 and 18.01 (doc. 47-1, pp. 1-5) in support of his contention that the defendants violated SCDC policy in the manner in which they approached his medical care. He argues that despite being diagnosed with Hepatitis in 2008, the "treatment never materialized" and that these policies concerning continuation of care were therefore violated (resp. to m.s.j. p. 5).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific,

3

material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the the the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

***Deliberate Indifference to Serious Medical Needs***

Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97,102 (1976). This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach. *Id.* at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). A medical need is "serious" if "it

4

is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." *Miltier v. Beorn*, 896 F.2d 848, 851-52 (4th Cir. 1990) (citation omitted). "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle*, 429 U.S. at 106. Mere negligence or malpractice does not violate the Eighth Amendment. *Id.* Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

The plaintiff complains his medical care did not conform with SCDC Policy H.S. 18-15, Specific Procedure No. 8, which calls for an Individual treatment plan for an inmate with hepatitis (doc. 47-1, p. 3), and other SCDC policies for continuity of care for communicable diseases. A collective review of the applicable SCDC policies submitted by the plaintiff reveals that an inmate with a communicable disease should be afforded an individualized treatment plan, provided appropriate therapy, and "*if* the treatment requires hospitalization..., the inmate will be transported to an appropriate medical facility" (doc. 47-1, p.5: SCDC Policy HS-18.01 No. 2.2) (emphasis added). A plain reading of the cited policy clearly authorizes discretion by the medical staff on the appropriate course of treatment. In any event, the plaintiff signed the treatment agreement and had lab work ordered in December 2008 (Sampson aff. p. 2; doc. 31-3, pp. 16-17, encounter 249). The medical records further show that on January 8, 2010, the plaintiff, asymptomatic of Hepatitis, went to the medical staff and requested treatment if deemed appropriate for him; Dr. Steen did not order treatment in his sign-off review (doc. 31-3, p. 11, encounter 277).

The plaintiff returned to medical on June 17, 2010, still asymptomatic, and requested admission into the KCI treatment program. Dr. Sampson ordered additional lab testing on June 17th (*id.*, p. 10, encounter 280; Sampson aff. p. 2). On January 6, 2011, the plaintiff met with Dr. Sampson to inquire again about the KCI program. Dr. Sampson explained that the plaintiff's lab tests for liver functioning were within normal limits, and therefore the plaintiff did not meet the SCDC protocol for the KCI program (doc. 31-3, pp. 7-8, encounter 292; Sampson aff. pp. 2-3).[3] In March 2011, after additional lab work (doc. 31-3, p. 6, encounter 300), Dr. Samson began Havrix injections (a vaccine for Hepatitis A), and these injections have continued at least through November 22, 2011, or just two months prior to the plaintiff filing this action (*id.*, p. 2, encounter 320).

The failure of prison officials to follow their own policies or procedures, standing alone, does not amount to a constitutional violation. *See United States v. Caceres,* 440 U.S. 741, 751-52 (1978); *Keeler v. Pea*, 782 F.Supp. 42, 44 (D.S.C.1992) (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983). Whether the plaintiff had an individual treatment plan per SCDC policy and whether it was followed to the letter are not determinative of this constitutional challenge; rather, the issue is whether the defendants provided appropriate medical care for him. The plaintiff's medical records reveal that since his September 2008 diagnosis, the medical staff has had 75 encounters with the plaintiff or his chart, including examinations, lab work, monitoring, and the dispensing of medication, up through the last entry submitted, encounter 324, on February 9, 2012 (doc. 31-3, p. 2, encounter 324). Even if there was delay in processing the plaintiff's request for admission into the KCI program, his health was monitored since his Hepatitis diagnosis in 2008, and he was asymptomatic through January 2011, when he was advised by Dr. Sampson that his

---

[3] It is worth noting here that the plaintiff's grievance regarding denial of treatment was filed and rejected between his June 2010 and January 2011 medical visits (*see* doc. 1-1, pp. 1-2).

condition did not warrant placement in the KCI program. Accordingly, the plaintiff has presented no proof that the processing delay, or its ultimate rejection, led to the escalation of his condition. When lab results dictated treatment, the plaintiff was provided medication within BRCI, and according to Dr. Sampson, continues to receive such treatment with no "emergent or urgent medical problems" (Sampson aff. p. 3). Accordingly, the plaintiff has failed to establish that the defendants were deliberately indifferent to his serious medical needs.

*Equal Protection*

The plaintiff also alleges that the defendants discriminated against him because they have treated white inmates with the same ailment. As addressed above, the plaintiff received and continues to receive treatment, just not as he would prefer.

The Equal Protection Clause "is essentially a directive that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). To show his equal protection rights were violated, the plaintiff must demonstrate that he was treated differently from similarly situated inmates, and the discrimination was intentional or purposeful. *Williams v. Hansen*, 326 F.3d 569, 576 (4th Cir. 2003).

The plaintiff has failed to state a viable claim of discrimination. He does not provide the court with his race in his complaint, and he has not provided any evidence whatsoever to back up his bare allegation that discrimination must have occurred because whites received treatment. Accordingly, his equal protection claim is baseless.

*Grievance Procedure*

To the extent the plaintiff alleges that Warden Stevenson improperly denied his grievance regarding his medical care, he has failed to state a claim actionable under Section 1983. "The Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by the state." *Adams v. Rice*, 40 F.3d 72, 75

(4th Cir.1994) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). Accordingly, this claim fails.

***Respondeat Superior***

To the extent the plaintiff alleges Warden Stevenson acted in a supervisory capacity to deny him his constitutional rights, this claim fails. The doctrine of *respondeat superior* generally is inapplicable to Section 1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 928-29 (4th Cir. 1977). The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and, (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.). The plaintiff has failed to establish the three elements with regard to Warden Stevenson. Other than denying the grievance, the plaintiff has made no allegations against Warden Stevenson and certainly none related to his medical care.

***Eleventh Amendment Immunity***

To the extent the defendants are sued in their official capacities for monetary damages, they correctly assert that they are immune from suit in this court. As arms of the state, they are entitled to sovereign immunity and are not "persons" under Section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989). Although a State may waive sovereign immunity, *Lapides v. Board of Regents*, 535 U.S. 613 (2002), the State of South Carolina has specifically denied this waiver for suit in federal district court. *See* S.C. Code Ann. § 15-78-20(e).

## **CONCLUSION AND RECOMMENDATION**

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the defendants' motion for summary judgment (doc. 31) be granted.

s/ Kevin F. McDonald
United States Magistrate Judge

August 16, 2012
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
300 East Washington St, Room 239
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984.